**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| ZP NO. 314, LLC, | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | * CIVIL ACTION NO. 16-00521-B |
| | * |
| ILM Capital, LLC, *et al.,* | * |
| | * |
|     Defendants. | * |

<u>ORDER</u>

This action is before the Court for the determination of appropriate relief following a trial on Plaintiff, ZP No. 314, LLC ("ZP")'s claims under the Lanham Act for cybersquatting (15 U.S.C. § 1125(d) and unfair competition (15 U.S.C. § 1125(a), claims for trademark infringement and unfair practices under Alabama Code § 8-12-1, *et seq.*, and claims for contributory and vicarious liability and intentional interference with business relations.[1] (Doc. 176 at 22-30, 36-37).  The Court found in favor of ZP on its claims for unfair competition, trademark infringement and unfair practices, and contributory and vicarious liability against Defendants ILM Capital, LLC, Michael Wheeler, and A.J. Hawrylak (hereinafter sometimes "ILM Capital Defendants" or "Defendants").

---

[1] The Court incorporates, as if fully set forth herein, the findings of fact and conclusions of law set forth in its order dated September 30, 2019.  (Doc. 176).

The Court found in favor of these Defendants on ZP's cybersquatting claim and claim for intentional interference with business relations.[2]  (Id. at 12-22, 32).  The Court also found in favor of Defendants ILM Mobile Management LLC, We Communities LLC, and Mobile CQ Student Housing LLC on all of ZP's claims.  (Id. at 32).

With respect to the aforementioned claims on which ZP prevailed at trial, ZP has requested nominal damages, injunctive relief, attorneys' fees, and costs. (Doc. 193 at 5-6).  Defendants WE Communities, LLC, Mobile CQ Student Housing, LLC, ILM Mobile Management, LLC, and Mary Schaffer-Rutherford assert that they too are prevailing parties and have filed a motion for attorneys' fees and costs in this action.  (Doc. 206).  The motions have been fully briefed by the parties and are before the Court for determination. The parties' motions will be addressed in turn.

### I.   ZP's Request for Nominal Damages.

As noted, *supra*, following a bench trial in this case, the Court issued an order on September 30, 2019, finding in favor of ZP on its claims for unfair competition under the Lanham Act, trademark infringement and unfair practices under Alabama Code § 8-12-1, *et seq*., and contributory and vicarious liability against the "ILM Capital Defendants". (Doc. 176 at 22-30, 36-37).  ZP

---

[2] The Court previously granted Defendant Mary Schaffer-Rutherford's motion for summary judgment.  (Doc. 130 at 59).

requested equitable relief in the form of an accounting of Defendants' profits, attorneys' fees and costs, nominal damages, and injunctive relief. In an order dated October 29, 2019 (Doc. 193), the Court determined that, in pretrial proceedings and at trial, ZP abandoned its claims for an accounting of profits and sought only nominal damages, injunctive relief, attorneys' fees, and costs in relation to its claims for unfair competition under the Lanham Act and trademark infringement/unfair practices under Alabama law. In light of ZP's waiver of claims for lost profits, the Court awards ZP nominal damages in the amount of $1.00 on its claims for unfair competition under the Lanham Act, trademark infringement and unfair practices under Alabama law, and contributory and vicarious liability against the ILM Capital Defendants.[3]

## II. **ZP's Request for Injunctive Relief**.

At the conclusion of the bench trial in this case on December 7, 2018, ZP filed a motion in open court for immediate injunctive relief and Motion for Judgment as a matter of law.[4] (Docs. 163, 164). ZP sought an order directing Defendants to transfer the eight domain names made the subject of this lawsuit to ZP. (Id.).

---

[3] In the pretrial order, the only issue that was bifurcated was any claim for attorneys' fees. ZP offered no evidence at trial regarding lost profits.

[4] Neither motion was accompanied by a supporting brief.

After hearing arguments from the parties, the Court took the motions under advisement and declined to order an immediate transfer of the eight domain names at issue.  The Court directed Defendants to maintain the *status quo* but did not address the renewal of the registration for the domain names.  (Doc. 167 at 47-50).  On that same date, the Court entered an endorsed order taking ZP's motions under advisement.  (Doc. 165).

On January 22, 2019, Defendants filed a brief entitled "Response to Plaintiff's Motion for Immediate Injunctive Relief." (Doc. 172).  Included within Defendants' response brief was a statement "notify[ing]" the Court and ZP that, "unless instructed otherwise by the Court," Defendants intended to disable the auto-renewal feature for the subject domain names so that the registrations on the domain names would lapse on the registration anniversary dates in May 2019.  (Doc. 172 at 2).  Defendants reasoned that, when they allowed the domain names to auto-renew the previous year in order to maintain the *status quo*, ZP claimed it was an additional act of cybersquatting.  (Id. at 1).  Thus, to avoid further claims of cybersquatting, they did not intend to auto-renew the domain names unless the Court instructed otherwise. (Id.).  ZP filed a reply brief cautioning Defendants to maintain the *status quo* as instructed by the Court on December 7, 2018. (Doc. 174 at 1-2).  Once Defendants disabled the auto-renewal in

4

May 2019, the registration for the domain names lapsed and returned to public auction.  (Doc. 190 at 1).

On September 30, 2019, the Court issued an order finding in favor of ZP on its Lanham Act claims, state law trademark infringement and unfair practices claims, and contributory and vicarious liability with respect to these claims and held that ZP was entitled to injunctive relief.[5]  (Doc. 176 at 37).  In a separate "Partial Judgment," also dated September 30, 2019, the Court ordered ZP, with input from Defendants' counsel, to file a proposed permanent injunction enjoining Defendants from use of ZP's federally registered marks.  (Doc. 177).  ZP filed a proposed order requesting, *inter alia*, that Defendants ILM Capital, LLC, Michael Wheeler, and A.J. Hawyrlak be permanently enjoined from all use or infringement of ZP's "One Ten" and "One Ten Student Living" trademarks.  (Doc. 188).

In Defendants' brief in response, they asserted that ZP's request for injunctive relief is moot.  According to Defendants, per the notice provided in their brief in February 2019, out of concern that ZP would attempt to use any registration as new evidence of cybersquatting, they disabled the auto-renewals; thus, their registration for the domain names lapsed in May 2019, and

---

[5] The Court advised that the issue of damages had yet to be determined.  (Doc. 176 at 37).

they could no longer transfer the domain names to ZP because they no longer owned them.[6] (Doc. 190). Defendants further argued that ZP's proposed order for a permanent injunction was overly broad. (Doc. 190 at 2). In its reply, ZP has argued that its request for injunctive relief is not moot and that Defendants' conduct in allowing the domain names to lapse evidences continued bad faith by Defendants. (Doc. 197).

The Lanham Act provides courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. See Hard Candy, LLC v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1353 (11th Cir. 2019)("In 'ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day.' . . . This is because 'the public deserves not to be led astray by the use of inevitably

---

[6] Defendants further argued that ZP's proposed order for a permanent injunction was overly broad. (Doc. 190 at 2).

confusing marks,' and injunctive relief is the surest way to prevent future harm.") (citations omitted).

Historically, the Eleventh Circuit has subscribed to the rule that "infringement of a trademark is, by its very nature, an activity which causes irreparable harm." Sream, Inc. v. Barakat Food, Inc., 2017 U.S. Dist. LEXIS 165420, *7, 2017 WL 7792613, *3 (S.D. Fla. Oct. 4, 2017), *report and recommendation adopted*, 2017 WL 7796163 (S.D. Fla. Oct. 31, 2017) (citing North Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1227 (11th Cir. 2008)). See also David Boggs, LLC v. Soltis, 2019 U.S. Dist. LEXIS 159063, *9, 2019 WL 5110699, *4 (M.D. Fla. Aug. 26, 2019), *report and recommendation adopted*, 2019 WL 4439866 (M.D. Fla. Sept. 17, 2019)("In trademark infringement actions, injunctive relief is often appropriate because: 1) 'there is no adequate remedy at law to redress infringement and 2) infringement *by its nature* causes irreparable harm.'")(emphasis in original)(citations omitted).

In Spire, Inc. v. Cellular S., Inc., 2017 U.S. Dist. LEXIS 146169, *53, 2017 WL 3995759, *18 (S.D. Ala. Sept. 11, 2017)(J. DuBose), this Court observed that the presumption of irreparable harm in a trademark infringement has been called into question by the Supreme Court's decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 390-92, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). In eBay, the Supreme Court rejected a "general rule" that either presumed irreparable injury or categorically denied it in patent

cases. Id. at 393-94.

In Axiom Worldwide, 522 F.3d at 1228, the Eleventh Circuit declined to decide whether a presumption of irreparable injury in a trademark infringement case "is the equivalent of the categorical rules rejected by the [Supreme] Court in eBay." See also Nike, Inc. v. Austin, 2009 U.S. Dist. LEXIS 100779, 2009 WL 3535500 *5 (M.D. Fla. 2009)(citing Axiom Worldwide, 522 F.3d at 1228). In Axiom Worldwide, the Eleventh Circuit confronted the relatively unique circumstance of trademark infringement arising from a defendant's use of the plaintiff's trademarks in meta tags on its website, which meta tags were not displayed to visitors to the website. Id. at 1216-1217. In analyzing whether the plaintiffs were entitled to a preliminary injunction, the Eleventh Circuit acknowledged that its "prior cases do extend a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." Id. at 1227. The court declined to resolve the issue of whether the presumption would be sufficient to establish irreparable harm in light of eBay, instead remanding the case to the district court to determine whether irreparable harm was shown without reliance on the presumption, among other things. Id. at 1228.

Assuming, without deciding, that there is no presumption of irreparable harm in this trademark infringement case, the Court has nevertheless found that Defendants' use of ZP's trademarks

would likely result in consumer confusion, given that the domain names were identical or confusingly similar to ZP's marks and were intentionally chosen by Defendants for that reason; that Defendants are direct competitors of ZP and offer the same goods and services in the same locale as ZP; that Defendants and ZP both use the internet to advertise and compete for the same customer base; and that the Defendants have repeatedly exhibited bad faith in their dealings with ZP. (Docs. 130, 176, 196 at 8). Because irreparable injury can be based upon the possibility of confusion, ZP has established irreparable harm in this case, with or without the presumption. See Ferrellgas Partners, L.P. v. Barrow, 143 Fed. Appx. 180, 190 (11th Cir. 2005)(irreparable injury can be based "upon the possibility of confusion."); Sream, 2017 WL 7792613 at *3 (grounds for irreparable injury include "the possibility of confusion.").

Moreover, based on the evidence in this case, as recounted herein and in the Court's previous orders in this case (Docs. 130, 176, 196), the Court is satisfied that monetary damages are inadequate to compensate for ZP's injury; that considering the balance of hardships between ZP and Defendants, a remedy in equity is warranted; and that the public interest would not be disserved by a permanent injunction. (Docs. 130, 166, 167, 176, 196). Indeed, Defendants and ZP are competitors for the local student housing market and Defendants knowingly selected and registered

eight domain names containing ZP's trademarks in an effort to divert traffic from ZP's website, and then parked the domain names on their own parked webpages, with full knowledge that ZP, their competitor, had obtained registration of the "One Ten Student Living" and "One Ten" marks in July and October 2017, and in spite of ZP's repeated demands that Defendants cease using their marks and transfer the domain names to them, Defendants refused.

While Defendants contend that ZP's request for injunctive relief is moot because Defendants no longer possess the registrations for these domain names, ZP's request for the transfer of the domain names is only one facet of its broader request for injunctive relief, namely, that the Court enjoin Defendants from any and all use of ZP's "One Ten" and "One Ten Student Living" trademarks. (Doc. 188). Thus, ZP's request for permanent injunctive relief is not moot simply because Defendants relinquished ownership and control over the eight domain names at issue in this case and can longer facilitate the transfer of the domain names to ZP.[7]

---

[7] With respect to ZP's assertion that Defendant's failure to renew the eight domain names following the Court's directive to maintain the *status quo* is further evidence of bad faith, the undersigned finds otherwise. The lapse of the registrations was unfortunate; however, due to an oversight by the Court, the registrations expired prior to issuance of the Court's opinion in this case. In the absence of an express assurance from the Court, or a stipulation between the parties, that Defendants' renewal of the registrations in May 2019 would not constitute actionable conduct,

Further, the Court rejects Defendants' argument that injunctive relief is unwarranted because ZP has failed to demonstrate that Defendants "are likely to register additional One-Ten related domain names" in the future. (Doc. 190 at 4). The evidence of Defendants' bad faith in its dealings with ZP, as well as its other competitors, is replete, as detailed repeatedly in this case. (Doc. 130 at 34-38; Doc. 176 at 7 n.7, 16-26; Doc. 196 at 8). Defendants' conduct in registering domain names that are confusingly similar to the trademarks of its competitors appears to be a mode of operation, not an isolated occurrence. (Doc. 176 at 19). Based on the clear evidence of bad faith in this case, the Court finds that ZP has demonstrated that, absent an injunction, there is a likelihood that Defendants will continue to infringe on ZP's "One Ten" and "One Ten Student Living" trademarks in the future.

Based on the foregoing, the Court **FINDS** that a permanent injunction is necessary to protect ZP from the threat of future irreparable injury, that monetary damages are inadequate to compensate ZP for its injury, that considering the balance of hardships between ZP and Defendants a remedy in equity is warranted, and that the public interest would not be disserved by

---

the Court cannot find that Defendants' decision against renewal of the registration was unreasonable under the circumstances.

a permanent injunction.  Accordingly, the Court hereby **GRANTS** a permanent injunction barring Defendants ILM Capital, LLC, Michael Wheeler, and A.J. Hawyrlak (sometimes referred to as "ILM Capital, Wheeler, and Hawyrlak" or "Defendants"), from further use of the "One Ten" and/or "One Ten Student Living" marks, as well as prohibiting ILM Capital, Wheeler, and Hawrylak from using "One Ten" and/or "One Ten Student Living" or any confusingly similar mark in commerce, as part of a domain name, or for any other reason.  The injunction shall extend to such use by Defendants ILM Capital, Wheeler, and Hawrylak (individually or collectively); their officers, agents, servants, employees, and attorneys; any entity in which said Defendant(s) have an ownership interest (excluding public companies in which said Defendant(s) own less than 1% of the outstanding shares); and any person or entity making such use in active concert or participation with or under said Defendant(s) direction or control.[8]

### III. <u>ZP's Request for Attorneys' Fees and Costs</u>.

As stated, following a bench trial in this case, the Court issued an order on September 30, 2019, finding in favor of ZP and against Defendants ILM Capital, Wheeler, and Hawrylak on ZP's claims for unfair competition, trademark infringement and unfair

---

[8] The Court has considered Defendants' objections that ZP's proposed order was overbroad and has tailored the instant order so as to fully comply with <u>Federal Rule of Civil Procedure</u> 65.

practices, and contributory and vicarious liability.  (Doc. 176 at 22-30, 36-37).  In its motion, ZP argues that, in light of Defendants' "intentional and bad faith conduct, obstinate refusal to transfer the infringing domains, and litigiousness in general," this is an "exceptional case" warranting an award of attorneys' fees in favor of ZP pursuant to the Lanham Act (15 U.S.C. § 1117) and under the Alabama Trademark Act (Ala. Code § 8-12-18(c)).[9] (Docs. 203, 204).  ZP requests attorneys' fees in the amount of $634,266.00 and recoverable costs and expenses in the amount of $2,977.08, for a total of award of $637,243.08 in fees, costs, and expenses.  (Doc. 203 at 4).

Defendants oppose ZP's request for *any* attorney's fees in this case and argue that this case is not exceptional.  Defendants contend that they were not litigious[10] and that any "victory" by ZP

---

[9] Under the Alabama Trademark Act, the Court may award "reasonable attorney fees" "[t]o a prevailing owner in such cases when the court finds the defendant willfully intended infringement or dilution."  Ala. Code § 8-12-18(c)(1).  Having found that Defendants ILM Capital, Wheeler, and Hawyrlak willfully intended the trademark infringement in this case, ZP is entitled to a reasonable attorneys' fees award under this Act as well.  The evidence that establishes ZP's entitlement to an award of attorneys' fees under the Lanham Act, discussed in detail, *infra*, also establishes ZP's entitlement to an award of attorneys' fees under the Alabama Trademark Act.  As previously discussed, the Court soundly rejects Defendants' arguments that ZP cannot recover under the Alabama Trademark Act because ZP was not a prevailing party in this case and because Defendants did not willfully infringe on ZP's trademarks.  (Doc. 211 at 24-25).

[10] While the Court has not found Defendants to have been so litigious as to have rendered this case exceptional on that basis,

is "hollow," "nominal," "pyrrhic" and "so technical and insignificant that the only 'reasonable' fee award is none at all." (Doc. 211 at 4-5, 11, 13).  Defendants concede that, if awarded, the rates charged by Plaintiff's counsel *are* reasonable;[11] however, Defendants argue that the hours should be reduced because ZP did not prevail on all of its claims or against all of the Defendants. Defendants also argue that ZP should not have incurred substantial legal fees after summary judgment because some of its claims were dismissed, and one Defendant was dismissed, that ZP's counsel expended twice the number of hours as Defendants' counsel, and that ZP should have resorted to other methods of dispute resolution instead of litigation.  (Doc. 211).

    ZP counters that Defendants' deliberate and willful trademark infringement and bad faith conduct render this case "exceptional." ZP further argues that the legal work performed by ZP's counsel was necessary and would have been the same even absent the claims and/or Defendants as to which ZP did not ultimately prevail, as all of the claims and Defendants were and are interrelated.  ZP also argues that the legal work performed by counsel after the summary judgment stage was necessary to prepare the case for trial

---

the Court rejects any implication that the filings in this case were minimal. (Doc. 211 at 3).

[11] Defendants concede that the hourly rate requested by ZP is reasonable. (Doc. 211 at 28).

and to address post-trial motions and submissions. ZP further asserts that the total number of hours expended by Defendants' counsel are not in the record for comparison, nor should they be compared as much of ZP's legal work was necessitated by and performed in response to motions and briefs filed by Defendants. ZP also argues that it attempted repeatedly pre-suit and post-filing to settle this matter, but Defendants refused attempts at settlement and even filed a retaliatory state court action against ZP, which Defendants later voluntarily dismissed when forced to provide discovery.  (Docs. 204, 213).

"The Lanham Act allows courts to award reasonable attorney fees to prevailing parties 'in exceptional cases.'" Donut Joe's, Inc. v. Interveston Food Servs., LLC, 116 F. Supp. 3d 1290, 1292 (N.D. Ala. 2015)(quoting 15 U.S.C. § 1117(a)).  The Lanham Act also allows the registrant of a mark who establishes trademark infringement to collect qualifying *costs* of the action, regardless of whether the case is found to be "exceptional."  Choice Hotels Int'l, Inc. v. Key Hotels of Atmore, II, LLC, 2016 U.S. Dist. LEXIS 155449, *20, 2016 WL 6652453, * 7 (S.D. Ala. Nov. 9, 2016) ("the plain language of § 1117(a) makes clear that the higher standard for attorneys' fees does not apply to costs.")(citing 15 U.S.C. § 1117(a)).  While the term "costs of the action" is not defined by the Lanham Act, "the term has been interpreted as meaning the costs allowed under 28 U.S.C. § 1920," namely, (1) fees of the clerk and

marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828. Choice Hotels Int'l, Inc. v. Key Hotels of Atmore II, 2017 U.S. Dist. LEXIS 222711, *16, 2017 WL 6945340, *6 (S.D. Ala. Aug. 18, 2017); 28 U.S.C. § 1920.

A prevailing party is the party who "succeed[s] on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit." Montgomery v. Noga, 168 F.3d 1282, 1304 (11th Cir. 1999)(plaintiff was a "prevailing party" where he succeeded in procuring an injunction to prevent defendants from falsely designating the origin of his copyrighted computer program, which plaintiff sought in initiating the suit)(citing Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 853 (11th Cir. 1990)(plaintiffs were prevailing parties where they succeeded in protecting their copyrights and programs, the principal objectives of the lawsuit). "Where the [party's] success on a legal claim can be characterized as purely technical or de minimis, a district court would be justified in

16

concluding that [this definition] has not been satisfied." Id. (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989)).

In the instant action, ZP prevailed on some of its claims and successfully obtained a permanent injunction against the ILM Capital Defendants (ILM Capital, Wheeler, and Hawyrlak), preventing them from all use of ZP's "One Ten" and "One Ten Student Living" marks, which relief ZP sought when initiating this action. Having succeeded on such a central issue in the case, ZP is a prevailing party. As such, ZP is entitled to recover qualifying costs incurred in this action. Moreover, upon a showing that this is an "exceptional case," ZP is entitled to reasonable attorneys' fees, as well. 15 U.S.C. § 1117(a)).

Historically, an "exceptional case" has been defined in the Eleventh Circuit as "one that can be characterized as malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists.'" Donut Joe's, 116 F. Supp. 3d at 1292 (quoting Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1335 (11th Cir. 2001) (internal citations and quotation marks omitted)). However, in Tobinick v. Novella, 884 F.3d 1110, 1118 (11th Cir. 2018), the Eleventh Circuit held that the previous definition of "exceptional case" under the Lanham Act was abrogated by the Supreme Court's decision in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014), in which the

Supreme Court analyzed identical language under the Patent Act. The Eleventh Circuit held that, following Octane Fitness, the definition requires only a finding that the case "'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated," or is one which is "uncommon" or "not run-of-the-mill." Id. (quoting Octane Fitness, 134 S. Ct. at 1756).

The determination of whether a case is "exceptional" is to be made in the district court's discretion, on a "case-by-case" basis, considering "the totality of the circumstances." Octane Fitness, 572 U.S. at 545.  A "nonexclusive" list of factors that the court may consider includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 554 n.6. "[I]f the trial court finds that the circumstances of the case are, in fact, exceptional, the decision whether to award [a prevailing party] attorney's fees is still discretionary." Dieter v. B & H Indus. of Sw. Fla., Inc., 880 F.2d 322, 329 (11th Cir. 1989); see also Suntree Techs., Inc. v. Ecosense Int'l, Inc., 2013 U.S. Dist. LEXIS 38459, *10, 2013 WL 1174399, *3 (M.D. Fla. Feb. 7, 2013), report and recommendation adopted, 2013 WL 1174841 (M.D. Fla. Mar. 20, 2013 ("[D]etermining whether a case is exceptional and, if so, whether to award attorney's fees remains within the court's sound

discretion.").

In the instant case, there is ample evidence to establish that this case is "exceptional." First, ZP has shown that the ILM Capital Defendants (ILM Capital, Wheeler, and Hawyrlak) deliberately and willfully made unauthorized use of ZP's "One Ten" and "One Ten Student Living" marks by re-registering the domain names made up of ZP's marks and operating parked webpages with click-through advertising displaying ZP's trademarks prominently at the top of each page. (Doc. 176 at 2-11). Despite ZP's repeated demands that Defendants cease all use of the marks, Defendants persisted in that use although they had no legitimate claim to the marks whatsoever and with full knowledge that ZP obtained trademark rights in the marks in 2017. (Doc. 130 at 34-36; Doc. 166 at 125-29, 134-36, 185-86; Doc. 167; Doc. 168-2 at 16-19; Doc. 176).

Further, there is historical evidence of Defendants' predatory conduct in 2016, before ZP obtained trademarks in the "One Ten" and "One Ten Student Living" marks, when Defendants selected and purchased the eight domain names at issue in this case based on the fact that the domain names included the terms "One Ten" and "One Ten Student Living" (which terms were being used by ZP, Defendants' direct competitor, for its student housing project), which Defendants then used to redirect ZP's web traffic to Defendants' own website. (Doc. 176 at 2-11). In addition, ZP has shown that Defendants have a history of this type of predatory conduct against

its other competitors, including the registration of at least twenty-six domain names that were identical or confusingly similar to Defendants' competitors' names, which Defendants then used to redirect their competitors' web traffic to their own websites. (Doc. 176 at 7).  After ZP acquired trademark rights in the marks in 2017, Defendants re-registered and continued to use the marks and essentially forced ZP to expend great effort and resources to enforce its trademark rights.

The foregoing evidence establishes Defendants' conduct was knowing, willful, deliberate.  For ZP's part, its claims in this action were non-frivolous, even those that ultimately proved unsuccessful.  The Court further notes that quantifying the damages incurred as a result of infringement is extremely difficult, if not impossible.  See Denny Mfg. Co. v. Drops & Props, Inc., 2011 U.S. Dist. LEXIS 60155, *22, 2011 WL 2180358, *8 (S.D. Ala. June 1, 2011)("In copyright and trademark litigation, intangibles such as Denny's goodwill and trade names have significant value which is difficult to quantify."); Internetshopsinc.com v. Six C Consulting, Inc., 2011 U.S. Dist. LEXIS 31222, *16, 2011 WL 1113445, *6 (N.D. Ga. Mar. 24, 2011) ("[t]he business damage caused by defendant's unauthorized use of plaintiff's trademark is difficult, if not impossible, to quantify.")(citing Tally-Ho, Inc. v. Coast Cmty. Coll, Dist., 889 F.2d 1018, 1029 (11th Cir. 1989)("It is generally recognized in trademark infringement cases that . . . there is not

[an] adequate remedy at law to redress infringement.")). Based on the totality of the record, the Court finds that this case is "exceptional"[12] and that ZP, as a prevailing party, is entitled to reasonable attorneys' fees.

Turning now to the appropriate amount of attorneys' fees, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The resulting figure is known as the lodestar method, and the product is known as the lodestar. See In re Home Depot Inc., 931 F.3d 1065, 1076 (11th Cir. 2019). In applying the lodestar method, "[c]ourts should exclude from this initial fee calculation hours that were not reasonably expended," and "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." Hensley, 461 U.S. at 434 (internal quotation marks omitted). In addition, courts may apply to the lodestar a "multiplier, also known as an enhancement or an upward adjustment, to reward counsel on top of their hourly

---

[12] The Court finds that ZP would be entitled to attorneys' fees under both the pre-Tobinick standard (requiring malicious, fraudulent, deliberate, willful, or bad faith conduct on the part of Defendants) and the post-Tobinick standard (requiring a finding that the case stands out from others, is uncommon, or not run-of-the-mill). See Tobinick, 884 F.3d at 1118.

rates." Home Depot, 931 F.3d at 1076.  Courts may also adjust the fee upward or downward based on other factors such as the "results obtained." Hensley, 461 U.S. at 434. Where, as here, a prevailing party succeeded on only some of the claims for relief, courts may consider whether the plaintiff failed to prevail on claims that were *unrelated* to the claims on which he succeeded (and thus cannot be deemed to have been "expended in pursuit of the ultimate result achieved") and whether plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.  Id.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id., 461 U.S. at 435.

With respect to the hourly rate, a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).  "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," and "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." Id. (citations omitted). Also, an "agreed-upon billing rate" between a client and counsel

"is a strong indication of a reasonable rate." Tire Kingdom, Inc.
v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1337 (11th Cir. 2001).

In the present case, as previously noted, Defendants agree
that the hourly rates requested by ZP are reasonable in this
market.[13]  (Doc. 211 at 28).  Moreover, ZP has established through
opinion testimony from Edward Dean, Esq., that the rates requested
are reasonable in this market.[14]  (Doc. 203-2).  In addition, the

_____

[13] The rates for ZP's primary counsel range from $325 for attorney
Quittmeyer (35 years' experience), to rates of $225, $240, and
$250 for attorney Campbell (13 years' experience)(depending on the
year in which the work was done), $250 for attorney Parks
(associate with 26 years' experience), and $140 for paralegal
McCarthy (26 years' experience).  (Doc. 203-1 at 12).  There were
other lawyers and paralegals in the firm who spent small increments
of time on the case, charged at the following hourly rates: Ms.
Hart at $220 in 2018 and $230 in 2019, Mr. Gill at $305, Mr.
Morrissette at $350, Ms. Bitzer at $290, Mr. O'Dowd at $220, Ms.
Hartzog at $145, Ms. Miles at $140, and Ms. Thornton at $145.
(Id.).

[14] Mr. Dean attested that he has practiced business and commercial
litigation in a law firm in Mobile, Alabama, since 1981, that he
is familiar with fees charged in complex business cases in the
Mobile area, that he had extensively reviewed this case and
considered factors such as time and labor required, the novelty
and difficulty of the issues involved, the skill required to
perform the legal work properly, the customary fee charged in this
area for complex business litigation, the results obtained, and
the experience, reputation, and ability of the attorneys involved.
Mr. Dean opined that that hourly rate and number of hours expended
in this case were reasonable given that this was a complex,
intellectual property case that was handled successfully by the
attorneys involved.  (Doc. 203-2).  Moreover, comparable hourly
rates of attorneys at the Hand firm (representing ZP herein) have
previously been found by this Court to be reasonable and
recoverable in commercial litigation cases. See Breland v. Levada
EF Five, LLC, 2016 U.S. Dist. LEXIS 56396, *37, 2016 WL 1717207,
*12 (S.D. Ala. Apr. 28, 2016).

requested rates appear to have been agreed upon by ZP, a fact that provides a strong indication that the rates are reasonable.  (Doc. 203-1).  Based on the foregoing, including the Court's expertise,[15] the consideration of Mr. Dean's declaration, and Defendants' concession that the rates requested by ZP's counsel are reasonable, the Court finds that ZP has satisfied this requirement of the lodestar method.

With respect to the reasonable number of hours factor, the affidavit of Mr. Quittmeyer, lead counsel for ZP, shows that he spent 992.5 hours on this case through October 31, 2019; that Mr. Campbell spent 1045.9 hours; Ms. Parks spent 97.2 hours; and Ms. McCarthy (paralegal) spent 254.6 hours through that same date. (Doc. 203-1).  The Court has considered the reasonableness of these hours in the context of this particular case.  There is no question that the instant case has been lengthy and aggressively litigated. It has spanned more than three years in federal court and has involved issues relating to trademark infringement and unfair competition under the Lanham Act and comparable state law, which are complicated and specialized areas of law.  This case also has

---

[15] "The court may utilize its own 'knowledge and expertise' to come to an independent judgment regarding the reasonableness of requested attorney's fees." Wells Fargo Bank, N.A. v. Williamson, 2011 U.S. Dist. LEXIS 10838, *7, 2011 WL 382799, *3 (S.D. Ala. Feb. 3, 2011)(quoting Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994)).

been characterized by extensive motion practice by the parties, accompanied by laborious briefing.[16]   Ultimately, the case required a two-day trial, resulting in an important win for ZP on some of its claims.   The Court has also considered that an award of attorneys' fees to ZP will serve the purpose of encouraging trademark owners to undertake the necessary efforts to protect their trademark rights,[17] thereby also protecting the public from the harmful consequences of trademark infringement, and it will serve the important purpose of deterrence.[18]

Under the circumstances, the Court finds that the time expended by ZP's counsel was not more than reasonably required to litigate this action. Calculating the hourly rates by the number of hours claimed yields a lodestar figure of $634,266.00.   A lodestar figure "is itself strongly presumed to be reasonable."

---

[16] The parties' filings in this case have not been frivolous but have been aggressive, which has added to the considerable time required to respond on both sides.

[17] As the Eleventh Circuit recently stated, "[c]ourts have widely noted that '[t]he cost of enforcing [trademark] rights may well be larger than the lost profits in any particular case,' but trademark owners have an interest in preventing the weakening of their rights over time." PlayNation, 939 F.3d at 1215 (internal citations omitted).

[18] The Court rejects Defendants' argument that ZP should have pursued some form of dispute resolution other than filing this lawsuit.   (Doc. 211 at 30).   The record reflects that ZP made multiple (at least six), unsuccessful pre-suit attempts to resolve its dispute with Defendants before it resorted to litigation. (Doc. 166 at 26-31, 206-213; Doc. 168-2 at 36-38, 68).

_Resolution Trust Corp. v. Hallmark Builders, Inc_., 996 F. 2d 1144, 1150 (11th Cir. 1993).   Nonetheless, once the lodestar has been calculated, it may then be adjusted after considering other factors such as the results obtained.   _Hensley v. Eckerhart_, 461 U.S. 424, 434 (1983).   In _Hensley_, the Supreme Court recognized that where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." _Id_. at 461 U.S. 436.   In fact, the Court called the degree of success obtained "the most critical factor" in determining the reasonableness of a fee award to a prevailing party.   _Id._   Indeed, courts have significantly reduced fees when plaintiffs recovered a small percentage of their claimed damages.   See _Martinez v. Hernando Cnty. Sheriff's Office_, 579 Fed. Appx. 710, 715 (11th Cir. 2014) (affirming 75% reduction in fees where recovery was 1.8% of claim); _see also Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC,_ 2009 U.S. Dist. LEXIS 61057, 2009 WL 2143628, *2 (S.D. Fla. July 16, 2009)(reducing fees by 50% due to limited success).

In this case, some of the conduct for which ZP sought to hold Defendants liable, while egregious, occurred before ZP had protectible trademark rights.   Moreover, while ZP sought up to a statutory maximum of $2,400,000.00 in damages on its cybersquatting claims for violations occurring after July 2017, it did not prevail at trial on the cybersquatting claims.   The fact that ZP prevailed

26

on its unfair competition claims and obtained an injunction protecting its trademarks and prohibiting the offending conduct in the future was not insignificant, as detailed herein. However, viewing the litigation as a whole, ZP achieved limited success, which the undersigned finds warrants a 75% reduction in attorneys' fees.

Last, with respect to costs, ZP seeks $2,977.08, comprised of ZP's $400.00 filing fee, $1,947.16 for photocopies, $332.25 for the cost of the transcript of the deposition of ZP's expert Glenda Snodgrass taken by Defendants, $200.00 for witness per diems (including $120.00 for Glenda Snodgrass to attend a one-day deposition and the two-day bench trial, and $80.00 for Emily Moree to attend the two-day bench trial), and $97.67 in postage relating to service of process. (Doc. 203 at 4). Defendants object to these costs on the grounds that ZP did not prove that its witness fees for Snodgrass and Moree were actually incurred and that its photocopies were obtained for use in this case. (Doc. 211 at 321-32). The Court finds that the billing records and affidavit of Mr. Quittmeyer are sufficient proof that the photocopies were incurred in this case. (Doc. 207). However, it is unclear which of the fees paid by ZP applied specifically to Ms. Snodgrass and Ms. Moree. Therefore, the Court will reduce the recoverable costs by $200. Accordingly, ZP is entitled to attorneys' fees in the amount of **$158,566.50** pursuant to 15 U.S.C. § 1117 and the Alabama Trademark

27

Act, Ala. Code § 8-12-18(c)(1), and the same are hereby **AWARDED**. In addition, the Court hereby **AWARDS** ZP costs in the amount of **$2,777.08**.

    IV. **Defendants' Request for Attorneys' Fees and Costs**.

Movants, Defendants WE Communities, LLC, Mobile CQ Student Housing, LLC, ILM Mobile Management, LLC, and Mary Schaffer-Rutherford (sometimes referred to as the "non-ILM Capital" Defendants) have filed a motion for attorneys' fees and costs in this action pursuant to pursuant the Lanham Act, 15 U.S.C. § 1117(a), and the Alabama Trademark Act, ALA. CODE § 8-12-8(c). (Doc. 206). As discussed, the Court granted summary judgment for Defendant Rutherford and dismissed Defendants WE Communities, LLC ("WE Communities"), Mobile CQ Student Housing, LLC ("Mobile CQ"), ILM Mobile Management, LLC ("ILM Mobile"), at trial, finding that the evidence failed to establish that these Defendants participated in the infringement made the basis of this lawsuit. (Doc. 130 at 56; Doc. 176 at 12). Prior to their dismissal, however, the evidence regarding the precise nature of their relationship with the "ILM Capital" Defendants, who were found liable for intentional and willful trademark infringement at trial, was not always clear. Indeed, the evidence showed that all four of the "non-ILM Capital" Defendants/Movants were closely related to, working with, and affiliated with the ILM Capital Defendants at the time of the acts alleged in the amended complaint. As stated, however, the nature

and level of their involvement with the alleged acts of infringement was unclear until the summary judgment stage for Defendant Rutherford and until trial for Defendants We Communities, Mobile CQ, and ILM Mobile.

As discussed, the Lanham Act allows courts to award reasonable attorneys' fees to "prevailing parties" in "exceptional" cases. Donut Joe's, 116 F. Supp. 3d at 1292 (quoting 15 U.S.C. § 1117(a)); Montgomery, 168 F.3d at 1304 (a prevailing party is the party who "succeed[s] on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit."). The Court finds that Defendants Rutherford, We Communities, Mobile CQ, and ILM Mobile are prevailing parties under the Act. See generally Pickett v. Iowa Beef Processors, 149 Fed. Appx. 831, 832 (11th Cir. 2005)("A defendant is a prevailing party if the plaintiff achieves none of the benefits sought in bringing its lawsuit. If the case is litigated to judgment on the merits in favor of the defendant, the defendant is the prevailing party."); see also Pediatric Nephrology Assocs. of S. Fla. v. Variety Children's Hosp., 2018 U.S. Dist. LEXIS 114443, *7, 2018 WL 4778456, *2 (S.D. Fla. July 9, 2018), report and recommendation adopted, 2018 WL 4777166 (S.D. Fla. July 24, 2018)("Defendants became the prevailing parties when the Court granted summary judgment" as to the Lanham Act claim). As prevailing parties, the Movants are entitled to recover qualifying costs incurred in this action under

the Lanham Act.   However, unless these Defendants are able to establish that this is an "exceptional" case as between themselves and the Plaintiff ZP, they are not entitled to attorneys' fees under the Act.  15 U.S.C. § 1117(a)).

As discussed with respect to ZP's motion for attorneys' fees and costs, historically, an "exceptional" case under the Lanham Act was one characterized as "malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." Donut Joe's, 116 F. Supp. 3d at 1292.  However, after Octane Fitness, the standard became whether the case "'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated," or one which is "uncommon" or "not run-of-the-mill."  Tobinick, 884 F.3d at 1118 (quoting Octane Fitness, 134 S. Ct. at 1756).  The parties acknowledge that the decision regarding whether a case is "exceptional" lies solely within the district court's discretion and that the Court may consider factors such as frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.  Octane Fitness, 572 U.S. at 554 n.6.  Even in "exceptional" cases, however, the decision whether to award a prevailing party attorneys' fees rests soundly within the court's sound discretion.  See Dieter, 880 F.2d at 329; Suntree, 2013 U.S.

Dist. LEXIS 38459 at *10, 2013 WL 1174399 at *3.

Similarly, under ALA. CODE § 8-12-18(c), courts may award reasonable attorney fees to defendants who prevail on a claim brought under the Alabama Trademark Act "in such cases as the Alabama Litigation Accountability Act ["ALAA"] provides."   The ALAA, ALA. CODE §§ 12-19-270 to 12-19-276, provides for the recovery of reasonable attorneys' fees and costs "against any party or attorney if the court . . . finds that an attorney or party brought an action or any part thereof, or asserted any claim or defense therein, that is without substantial justification, or that the action or any part thereof, or any claim or defense therein, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct . . . ." Id. at § 12-19-272(c).

The grounds offered in support of the Movants' requests for attorneys' fees under both the Lanham Act and the Alabama Trademark Act in this case are identical, *i.e.,* that ZP's case against the Movant Defendants was weak; therefore, ZP's manner of litigation was unreasonable, and ZP must have had an improper motive in keeping them in the case.   (Doc. 206).   The Court has considered the applicable factors under both the Lanham Act and the Alabama Trademark Act, including the factors listed at Alabama Code, § 12-19-273 (such as efforts made to determine validity of the claim, efforts made to reduce the number of claims/defendants,

31

availability of facts to determine validity of claims, relative financial position of parties,[19] existence of bad faith, the amount of any offer of settlement in relation to the ultimate relief granted by the court,[20] etc.), as well as the totality of the circumstances in this case, and finds that Movants are not entitled to attorneys' fees under either Act.

The evidence shows that Defendants ILM Capital, Wheeler, and Hawrylak (the "ILM Capital Defendants") were directly involved in the registration, redirection, and re-registration of the domain names at issue in this case;[21] all of the domain names at issue in this case were registered by Hawrylak through Wheeler's account with GoDaddy.com; Defendant Wheeler is the manager, CEO, and sole member of ILM Capital, ILM Management, and WE Communities; Defendant ILM Capital is a real estate investment company whose portfolio includes Campus Quarters in Mobile, Alabama; Defendant

---

[19] The Court notes that Defendant Rutherford did not pay any of her own defense costs.   Rather, Movants state that her costs were apportioned among and paid by the other Defendants.  (Doc. 206 at 25).

[20] With respect to this factor, the Court has already discussed Defendants' hard-line approach to settlement.   Although the Movants ultimately prevailed with respect to ZP's claims against them, their approach to settlement does not weigh in their favor.

[21] As stated, the ILM Capital Defendants (Wheeler, ILM Capital, and Hawrylak) do not seek attorneys' fees or costs in this action. The "non-ILM Capital" Defendants/Movants (WE Communities, Mobile CQ, ILM Mobile, and Rutherford) were ultimately dismissed from this case and, on that basis, seek attorneys' fees as prevailing parties.

Hawrylak is ILM Capital's chief operating officer; Defendant Mobile CQ Student Housing owns the real property on which the Campus Quarters student apartments are located; Defendant ILM Mobile Management managed Mobile CQ Student Housing; Defendant WE Communities is a property management company that manages Campus Quarters; and Defendant Rutherford was an employee of WE Communities who managed Campus Quarters.   (Doc. 60 at 2; Doc. 66 at 4; Doc. 115 at 5; Doc. 95 at 4-5; Doc. 130 at 56; Doc. 166 at 79, 196-97).

In the Court's order granting Defendant Rutherford's motion for summary judgment, the Court noted that Rutherford was employed by WE Communities as the general manager of Campus Quarters and had been involved in the circumstances surrounding the alleged infringement in this case.[22]   However, the evidence ultimately showed that the GoDaddy account at issue was not in her name; she had no access to or control over the account; and her name did not appear anywhere in the documents produced by third parties relating

---

[22] The evidence showed that, on May 26, 2016, Rutherford worked for WE Communities and emailed Defendant Hawrylak, "[j]ust wanted to update you on our new comp. They have an Instagram. Onetenstidentliving (sic). Their website link does not work yet. But they posted a picture of what it will look like." (Doc. 168-2 at 56).  Hawrylak replied "Nice. Thank you. Let the fun begin." (Doc. 166 at 97; Doc. 168-2 at 56). The following day, Hawrylak registered three domain names using the terms "One Ten:" onetenusa.com, liveonetenapartments.com, and liveonetenmobile.com using Wheeler's/ILM's account with GoDaddy.com. (Doc. 166 at 88-98, 159, 196-199, 234-235, 241; Doc. 168-2 at 30, 43, 72).

to the GoDaddy Account.   Because there was no evidence of direct involvement by Rutherford in the registration, redirection, or reregistration of the domain names at issue, the Court dismissed ZP's claims against Rutherford at the summary judgment stage.[23] (Doc. 130 at 59; Doc. 97 at 2).   Similarly, at trial, the evidence ultimately failed to establish that WE Communities, Mobile CQ, and ILM Mobile personally participated in the infringement made the basis of this lawsuit.   (Doc. 176 at 12, 32).   Therefore, the Court dismissed ZP's claims against these Defendants.   (Id.).

As stated, the Movants argue that they are entitled to attorneys' fees under both the Lanham Act and the Alabama Trademark Act for the same reasons: ZP's case against them was weak. Therefore, ZP's manner of litigation was unreasonable (*i.e.,* ZP should never have sued them and/or should have dismissed them early in the case), which suggests that ZP must have had an improper motive in pursuing the case against them.   (Doc. 206 at 4).   The Court disagrees.

As stated, the relationship between Movants and the ILM

---

[23] The Court awarded summary judgment to all of the Defendants on ZP's state law claims for conduct occurring prior to March 23, 2017, and on ZP's federal claims for conduct occurring prior to July 2017. (Doc. 130 at 60-61). However, the Court noted that the evidence regarding the "level of direct participation" by Defendants Mobile CQ, ILM Mobile, and WE Communities after those dates was "murky" given the "interrelated nature of the corporate entities" and "Defendant Wheeler's ownership/control" over those entities. (Doc. 130 at 54-55, 58).

Capital Defendants and the nature and degree of their involvement
with the alleged infringement was far from clear, even as late as
the trial with respect to We Communities, Mobile CQ, and ILM Mobile.
All of the non-ILM Capital Defendants/Movants, as well as the ILM
Capital Defendants, were under the direction and control of
Defendant Wheeler in relation to the Campus Quarters student
housing facility, and Wheeler (along with Defendant ILM Capital and
Hawrylak) was found liable on four of the six counts in the second
amended complaint. Given the interrelatedness of all of the
Defendants and the furtive nature of the circumstances surrounding
the infringement itself, the strength of ZP's case against the
Movants was difficult to determine up to and including trial.[24]
Also, contrary to the Movants' suggestion, there is no evidence in
this case that ZP was ever motivated by an improper purpose in
pursuing its claims against these Defendants. Indeed, based on the
totality of the circumstances in this case, the Court is satisfied
that ZP's claims against the Movants, while ultimately
unsuccessful, were not frivolous, were not objectively unreasonable
(legally or factually), were not without substantial justification,
nor were they based upon any motivation other than an attempt to
protect ZP's legal rights in the "One Ten" and "One Ten Student

---

[24] For this reason, the Court denied summary judgment for Defendants
WE Communities, Mobile CQ, ILM Mobile, finding that it was
unwarranted at that stage of the proceedings. (Doc. 130 at 58).

Living" marks.  The Court likewise sees no need to award attorneys'
fees to the Movants in order to advance considerations of
compensation and deterrence.   There is no need to deter other
Plaintiffs like ZP from bringing suits to enforce their legal
rights, nor is there a need to compensate the Movants, particularly
where, as here, their defense was performed by the same legal
counsel who represented the ILM Capital Defendants and appears,
generally, to have been based on the same facts, law, etc.,
applicable to the ILM Capital Defendants. (Doc. 212 at 16).  Again,
although the Movants ultimately prevailed with respect to ZP's
claims against them, the Court is satisfied that this case is not
exceptional *vis-a-vis* these four Defendants and ZP.  See Florida
Van Rentals, Inc. v. Auto Mobility Sales, Inc., 2015 U.S. Dist.
LEXIS 108130, *6, 2015 WL 4887550, *3 (M.D. Fla. Aug. 17,
2015)("[A]fter considering the totality of the circumstances, the
Court finds that this case is not exceptional. First, although the
Court ultimately found that Plaintiffs lacked any protectable
rights in their asserted trademarks, it was not objectively
unreasonable or frivolous for Plaintiffs to attempt to enforce
their purported rights in these marks. . . . [A]lthough the totality
of the evidence supporting the validity of these marks was weak,
Plaintiffs' overall case was at least colorable.").  Accordingly,
for each of the reasons set forth above, Movants' motion for

attorneys' fees (Doc. 206) is **DENIED.**[25]

With respect to Movants' requests for taxable costs, Movants seek $1,482.61, which they describe as 78.4% of the total taxable costs for photocopies, transcripts, and subpoena and summons fees. (Doc. 206 at 30-31; Doc. 206-3 at 14, 125).   The problem with Movants' request is that the Court is unable to discern from the evidence submitted precisely which Defendant actually paid the costs and how much each Defendant paid.   Indeed, Defendants' attorney-prepared "spread sheet" does not identify a single Defendant who was actually billed and actually paid for the listed service.   (Id.).

Rather, the Movants' attorneys have prepared affidavits stating that Mobile CQ (on behalf of itself and ILM Mobile) paid 54.7% of Burr & Forman's legal fees (and presumably costs), and WE Communities paid 23.7% of same.   Therefore, Movants request 78.4% of the costs (and attorneys' fees) incurred in the case as a whole, including those incurred in defense of the ILM Capital Defendants who were found liable on four of the six counts in this case.   (Doc. 206-2 at 2; Doc. 206-3 at 7).   Curiously, counsel has described

---

[25] Having denied the Movants' request for attorneys' fees, the Court need not address ZP's remaining arguments directed to this issue, except as those arguments relate to the issue of costs. (Doc. 210 at 18).   That being said, the same reasons discussed in relation to the Court's denial of costs likewise apply to Movants' request for attorneys' fees.

Mobile CQ, ILM Mobile, and WE Communities in this case as being essentially unnecessary, nominal, and marginal Defendants.  Yet, now, the same counsel who asserts that these nominal Defendants paid 78.4% of all of the attorneys' fees and the costs in defending this case, has failed to produce a single billing record and instead has submitted a spread sheet that she prepared describing work performed by the firms' attorneys but making no mention of the Defendant/client for whom the work was performed or which Defendant/client actually paid the bill. (Doc. 206-3 at 17).  To be sure, even if Defendants had produced their actual billing records, the Court would still have proceeded to determine the reasonableness of such a curious allocation of fees and expenses as proffered by the Defendants in this case.  It is indeed fortuitous for the primary, culpable Defendants who dominated the defense of this case (Wheeler, Hawrylak, and ILM Capital) that the Movant Defendants who arguably had the smallest role in these proceedings, but prevailed in their defense and thus could seek attorneys' fees, assumed the lion's share of fees and costs incurred in defense of all Defendants.[26]  In any event, whatever the reason behind such a questionable arrangement, the Court is unable to

---

[26] As ZP points out, the Moving Defendants' "allocation" of costs and fees mysteriously does not allocate any percentage to Defendants Wheeler or Hawrylak, the two primary individual actors found liable for deliberate infringement and bad faith conduct in this case.

determine from the evidence submitted by Movants which taxable costs or attorneys' fees were actually billed to and paid by which Defendants (Movants or non-Movants). Thus, the motion for costs, as well as attorneys' fees, is **DENIED**. Cf., Essex Builders Grp., Inc. v. Amerisure Ins. Co., 2007 U.S. Dist. LEXIS 14458, *52007 WL 700851, *2 (M.D. Fla. Mar. 1, 2007) ("The Court finds that it would be manifestly unfair to Amerisure to require it to defend against the sizeable fee award claimed by Essex without the benefit of the *full record* upon which the fees are based.")(emphasis added); Ideal Elec. Sec. Co. v. International Fid. Ins. Co., 129 F.3d 143, 151 (D.C. Cir. 1997)("The reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole."). The Court can conceive of no good reason for Defendants' failure to submit the actual billing records for which they seek reimbursement. Defendants' assertion that reviewing their spread sheet was "easier" than reviewing the actual billing records is unacceptable.[27]   (Doc. 212 at 12).

---

[27] The Court agrees with ZP that "[t]he Moving Defendants want the Court to just take their word for it that their calculation of the amount of the *unidentified* 'client's' attorneys' fees is correct and that the *unidentified* 'client's' internal 'allocation' of those fees matters, and they go out of their way to avoid providing what they should have candidly given the Court: the actual billing records sent to the unidentified 'client' by the Defendants' lawyers." (Doc. 210 at 19)(emphasis added). Clearly, without full disclosure of the billing statements, ZP is wholly deprived of the opportunity to challenge the reasonableness of the fees

For each of the foregoing reasons, Movants' request for costs is **DENIED**.

**DONE** this the **28th** day of **May, 2020.**

                                    /s/ SONJA F. BIVINS
                            **UNITED STATES MAGISTRATE JUDGE**

---

requested by Defendants, as the Court is deprived of the ability to review the reasonableness of the request. In contrast, ZP has provided its actual billing records to the Court and to Defendants in connection with its Motion for Attorneys' Fees. Under the circumstances of this case, Defendants' request for attorneys' fees and costs, without providing the actual billing records to support that request, smacks of further bad faith.